UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT A. REED | CIVIL ACTION NO. 18-cv-0095 |
| VERSUS | JUDGE DRELL |
| PROCTER & GAMBLE MANUFACTURING CO., ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Robert Reed ("Plaintiff") is a former employee of Bilfinger Industrial Services, Inc. Plaintiff alleges that Bilfinger employed him as a welder at a Procter & Gamble job site, but Bilfinger fired Plaintiff (who is African-American) after he complained that a less experienced white employee was being paid almost twice as much per hour. Plaintiff filed this employment discrimination action against Bilfinger, Procter & Gamble, and two individual supervisors.

Before the court is a Motion to Dismiss filed by Procter & Gamble (Doc. 5) and a Motion to Dismiss filed by Bilfinger and Scott Crader (Doc. 8). The other individual supervisor, Larry George, has filed an answer but has not filed a dispositive motion. For the reasons that follow, it is recommended that Procter & Gamble's motion be granted. It is recommended that Bilfinger and Crader's motion be granted in part by dismissing all claims against Crader but be denied in all other respects.

**The Allegations**

Both motions are presented as motions to dismiss brought under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim on which relief may be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Accordingly, the principal facts alleged in the complaint will be set forth below.

Plaintiff, an African-American, began his employment with Bilfinger in January 2016 as an apprentice welder. He was assigned to work at a Procter & Gamble job site in Alexandria, Louisiana. At the time he began the job, Plaintiff had approximately six years of experience as a welder and was paid $15.64 per hour. Complaint, ¶ 10.

Plaintiff discovered in October 2016 that Bilfinger's employment policies stated that veterans of the armed forces were entitled to five years of additional seniority for purposes of compensation. Plaintiff, who is a veteran, also discovered at that time that a new employee, a 19-year-old white male, was being paid $29.50 per hour, almost twice what Plaintiff was earning. ¶¶ 11-12.

Plaintiff approached two of his supervisors, Scott Crader and Larry George, to ask about being awarded the five years of additional seniority and inquire why the less experienced white employee was being paid significantly more. ¶ 13. The supervisors provided no explanation or answers. ¶ 14.

A few months later, Mr. Crader told Plaintiff that he would have to take and pass a welding test as a condition of continued employment. Plaintiff received paperwork that directed he report to a location in Shreveport, approximately 120 miles from Alexandria,

to take his test. Plaintiff alleges that other employees who had taken the test did so at the Alexandria job site. ¶ 15.

Plaintiff traveled to Shreveport as directed to take the test, but he was told on that same day that he was terminated. He was not given an explanation. ¶ 16. Plaintiff states that he was later informed that his termination was due to "excessive absences," with a notation of "no call/no show per Scott Crader" on the formal termination paper. Plaintiff alleges that, for the duration of his employment with Bilfinger, he was absent from work on only two occasions. The first was to attend a civil court hearing at which he was awarded custody of his child, and for which he had obtained express permission from his supervisors to attend. The second was when he traveled to Shreveport to take the welding test as directed by his superiors. Plaintiff adds that his employee handbook characterizes excessive absences as three or more unexcused absences. ¶ 17.

Plaintiff alleges that these actions show that he was deprived of equal employment opportunities that adversely affected his status as an employee because of his race. He also alleges that he was retaliated against when he brought up the wage disparity between him and a less experienced white welder. ¶ 18. Plaintiff filed a charge of discrimination with the EEOC, and the agency issued him a notice of right to sue. Copies of the charge and notice are attached to the complaint as exhibits. ¶¶ 8-9, Exhibits A & B. The complaint does not set forth particular counts, but it invokes Title VII and La. R.S. 23:301, et. seq. in the grounds for jurisdiction and in the prayer for relief.

**Procter & Gamble**

Procter & Gamble argue in its motion to dismiss that the complaint does not allege that Plaintiff had an employment relationship with Procter & Gamble as required by Title VII or similar Louisiana employment discrimination laws. Plaintiff was represented by counsel when he filed his complaint and during the briefing of these motions. His attorneys have since withdrawn from the case, on representing that they were fired by Plaintiff (Doc. 32), and Plaintiff has stated that he intends to represent himself in these proceedings. Doc. 34.

When counsel filed a memorandum in response to the motions, they stated that "Plaintiff does not oppose the Motion to Dismiss of Defendant Procter & Gamble, Inc." Doc. 16, p. 2. The motion appears to be well founded, as both Title VII and Louisiana Title 23 generally give rise to a claim only against an "employer," as discussed below. For these reasons, Procter & Gamble's motion to dismiss should be granted.

**Scott Crader**

Supervisor Scott Crader makes a number of attacks on the complaint, but only one must be discussed. Crader argues that, as an individual supervisor, he is not subject to liability under Title VII or Louisiana Title 23. Plaintiff's former counsel filed a memorandum in opposition to his motion but did not address this argument.

The Fifth Circuit has held that "there is no individual liability for employees under Title VII." Smith v. Amedisys, Inc., 298 F.3d 434, 448 (5th Cir. 2002). That is because the statute imposes liability only on an "employer" as defined by 42 U.S.C. § 2000e(b). Similarly, the Louisiana Employment Discrimination Law also applies only to an

"employer" who employs a certain number of employees within the state. La. R.S. 23:302. Courts have recognized that the Louisiana statute, like Title VII, does not impose liability on co-workers or individual supervisors. Smith, 298 F.3d at 448 (interpreting predecessor statute); Hollister v. Gallagher, 2004 WL 224547 (E.D. La. 2004). Accordingly, Scott Crader is not subject to liability under Title VII or Louisiana's Title 23. No other claims are asserted against Crader, so he should be dismissed as a defendant.

**Title VII and Title 23 Claims against Bilfinger**

Bilfinger argues that Plaintiff's complaint does not state claims for race discrimination pursuant to Title VII or Louisiana Title 23. Bilfinger notes the requirements of a prima facie case of discrimination and asserts that the complaint falls short. Bilfinger does not specifically attack the adequacy of Plaintiff's allegation of a retaliation claim.

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). The facts alleged, taken as true, must state a claim that is plausible on its face. Amacker v. Renaissance Asset Mgmt. LLC, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Plaintiff alleged in his complaint that he discovered Bilfinger was paying a less experienced white employee almost twice as much as Plaintiff, a more experienced African-American employee. Plaintiff also alleges that when he approached two supervisors to ask about the discrepancy, he was not given an explanation but was soon ordered to pass a welding test as a condition of employment. Plaintiff alleges that he was fired on the same day he traveled to take the test, for no reason other than alleged excessive absences. Plaintiff contends that he was absent only twice, and both times were excused, which makes Bilfinger's stated reason for termination pretextual. Plaintiff alleges that his firing and other actions taken against him were because of his race.

Plaintiff's allegations appear to state a plausible claim of discrimination in the terms of his employment because of his race. Bilfinger suggests that Plaintiff must make out a prima facie case under the McDonnell Douglas standard to survive review, but the Supreme Court has held that plaintiffs need not do so to state a claim on which relief may be granted. The prima facie case "is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema NA, 122 S.Ct. 992, 997 (2002). The Court "has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." Id. Plaintiff's complaint alleges facts that provide a plausible basis for a race discrimination claim under Title VII and Title 23 and afford Bilfinger adequate notice of the grounds for the claims.

**Punitive Damages under Section 1981a**

Plaintiff's complaint prays for punitive damages and cites 42 U.S.C. § 1981a, which allows an award of punitive damages to a prevailing Title VII plaintiff if the plaintiff proves malice or reckless indifference to his federally protected rights. Williams v. E.I. du Pont de Nemours & Co., 180 F. Supp. 3d 451, 464-65 (M.D. La. 2016). Bilfinger argues that Plaintiff's claim for punitive damages must fail because it is predicated on the existence of a cognizable Title VII claim. This argument is rendered moot by the conclusion above that Plaintiff has stated a plausible Title VII claim.

Bilfinger also argues that the complaint does not plead a claim for punitive damages with adequate specificity. The complaint invokes the statute, asserts claims of race discrimination, and prays for an award of various forms of relief including back pay, compensatory damages, punitive damages, and attorney's fees. The request for punitive damages is not a claim unto itself but is merely a form of relief that may be available if a claim is proven and other requirements are satisfied. Bilfinger has not cited authority that would require the dismissal of a claim for a particular form of relief (punitive, compensatory, back pay, etc.) under these circumstances, so its motion should be denied in this respect.

**Exhaustion of Administrative Remedies; Pre-Suit Notice**

Bilfinger argues that Plaintiff's complaint must be dismissed because he did not exhaust his administrative remedies or give proper pre-suit notice before filing suit. Under Title VII, a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378–

79 (5th Cir. 2002). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. Id.; Garcia v. Penske Logistics, L.L.C., 631 F. Appx. 204, 207 (5th Cir. 2015).

The Louisiana employment discrimination statutes require a claimant to, before pursuing court action, give the person accused of discrimination written notice at least 30 days before initiating court action. The Louisiana notice requirement is intended to allow an opportunity for good-faith efforts and resolution. La. R.S. 23:303(C). Plaintiffs sometimes forget to comply with the Louisiana law requirement, and courts often forgive their failure if the plaintiff filed a pre-suit EEOC charge of discrimination that contained the information required by the state statute. Dean-Ball v. Garry McKinney Auto Group, 2005 WL 2304501, *8 (W.D. La. 2005).

Bilfinger does not dispute that Plaintiff filed a charge with the EEOC and received a notice of right to sue. Bilfinger argues that it was not, however, adequately named/notified by the charge and notice. The issue is presented on a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), so only the allegations in the complaint and its attached exhibits are relevant. U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004) (it was error for judge to consider evidence in a Rule 12(b)(6) contest, but the exhibits to the complaint were a part of the complaint that could be considered); Fed. R. Civ. Pro. 10(c).

Plaintiff attached to his complaint as an exhibit a copy of the charge of discrimination that he filed with the EEOC. The pre-printed EEOC charge form asked for the name of the employer that the claimant believed discriminated against him and

provided two blocks in which to list employers. The form instructed: "(If more than two, list under PARTICULARS below.)"

Plaintiff wrote "Procter & Gamble Manufacturing" in one of the two blocks afforded for listing the name of the employer. He left the other block empty. In the "particulars" section of the form, Plaintiff wrote that he began his employment with Bilfinger in 2016 and that the company employed over 200 people. He also set forth facts similar to those in his complaint. The EEOC later issued a notice of right to sue and sent a copy to senior counsel for Procter & Gamble. There is no indication on the form that a copy was sent to Bilfinger or any other person.

Bilfinger argues that Plaintiff's submissions warrant dismissal of his Title VII and Title 23 claims. It must be remembered, however, that Bilfinger has filed only a motion to dismiss and not a motion for summary judgment. The Fifth Circuit has recently clarified that a failure to exhaust administrative remedies under Title VII is not jurisdictional. "Failure to exhaust is an affirmative defense that should be pleaded." Davis v. Ft. Bend County, 893 F.3d 300, 307 (5th Cir. 2018).[1]

---

[1] This is consistent with the Supreme Court's holding that failure of prisoners to exhaust their administrative remedies under the PLRA is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. Jones v. Bock, 127 S.Ct. 910, 921 (2007). The Fifth Circuit has stated in another PLRA case that the burden is on the defendant to demonstrate that a plaintiff failed to exhaust administrative remedies, meaning the defendant "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). The same principles should apply to defenses in other civil cases.

The Fifth Circuit has stated, generally, that "[a]lthough dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 249 (5th Cir. 2017). Thus, a defendant is not entitled to a Rule 12(b)(6) dismissal of Title VII claims for failure to exhaust unless it appears from the face of the complaint that the plaintiff has not exhausted. Taylor v. Lear Corp., 2017 WL 6209031, *3 (N. D. Tex. 2017).

Plaintiff's complaint does not plead himself out of court in that fashion. He does attach exhibits that may be construed to lend support to an exhaustion/notice defense, but the complaint itself does not conclusively establish the defense. There may be other documents such as an intake questionnaire, correspondence from the agency, or otherwise that could indicate that Bilfinger was targeted by the charge of discrimination, was the subject of an amended charge, received other notice of the proceedings, or the like.[2] A plaintiff does not have a duty to anticipate a defendant's affirmative defense, assemble all documents potentially relevant to the defense, and make them exhibits to his complaint. Accordingly, the lack of such exhibits to the complaint cannot justify dismissal based on Bilfinger's asserted defenses.

If Bilfinger wishes to attempt to prevail on an affirmative defense, including lack of exhaustion or pre-suit notice, it should file a motion for summary judgment that presents its relevant evidence (or specifically points to a lack of evidence on an issue) and challenges

---

[2] An intake questionnaire may be considered part of the EEOC charge and expand its scope for purposes of exhaustion. Patton v. Jacobs Eng'g Grp., Inc., 874 F.3d 437, 443 (5th Cir. 2017) ("We find that Patton's intake questionnaire should be construed as part of the EEOC charge.")

Plaintiff to present competing evidence and create a genuine dispute of material fact. Dismissal based on the exhaustion and notice defenses is premature at this time.

**Request to Amend Complaint**

Plaintiff's memorandum requested in more than one place that Plaintiff be allowed to amend his complaint if it were not satisfactory. Plaintiff could have amended his complaint without leave of court within 21 days after the filing of the motions to dismiss. Fed. R. Civ. Pro. 15(a). Plaintiff chose not to do so then. The time for amending without leave of court has now passed, but Plaintiff may still move for leave to amend and submit a proposed amended complaint. If he intends to request leave to amend, he should do so promptly, without waiting for another motion to dismiss or motion for summary judgment.

Accordingly,

**IT IS RECOMMENDED** that Procter & Gamble's **Motion to Dismiss (Doc. 5)** be **granted** and that all claims against Procter & Gamble Manufacturing Co. be **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that the **Motion to Dismiss (Doc. 8)** filed by Bilfinger Industrial and Scott Crader be **granted in part** by **dismissing with prejudice** all claims against Scott Crader and be **denied** in all other respects.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of September, 2018.

Mark L. Hornsby
U.S. Magistrate Judge